FIDELITY TRUST CO. v. RECTOR et al.
(No. 1068.)

(Court of Civil Appeals of Texas. Amarillo.
Dec. 6, 1916. Rehearing Denied
Jan. 3, 1917.)

1. GIFTS ⊂⇒49(4)—SUFFICIENCY OF EVIDENCE
—INJUNCTION.

Evidence, in an action to restrain a sale of
property under execution in satisfaction of a
judgment against the husband of the principal
plaintiff, held to sustain a finding that the prop-
erty in question was acquired by such plaintiff
as a gift from persons to whom she and her
husband had sold property, and not as part con-
sideration for such property.

[Ed. Note.—For other cases, see Gifts, Cent.
Dig. § 99; Dec. Dig. ⊂⇒49(4).]

2. FRAUDULENT CONVEYANCES ⊂⇒44—DEED
TO EQUITABLE OWNER.

A vendor cannot commit a fraud on credit-
ors by making a deed to a grantee, to whom the
land already belongs by equitable title.

[Ed. Note.—For other cases, see Fraudulent
Conveyances, Cent. Dig. §§ 102–104; Dec. Dig.
⊂⇒44.]

3. APPEAL AND ERROR ⊂⇒934(2)—FINDINGS
TO SUPPORT JUDGMENT—PRESUMPTION.

Where, in an action to enjoin the sale of
property in satisfaction of a judgment against
the husband of the principal plaintiff, the issue
whether a prior contract between such plaintiff
and those from whom she claimed to have ac-
quired the property as a gift was a contract of
sale or a mortgage is not requested to be sub-
mitted, or submitted to the jury, and a find-
ing that such contract was a contract of sale is
necessary to the judgment, it will be presumed
on appeal that the trial court so found.

[Ed. Note.—For other cases, see Appeal and
Error. Cent. Dig. § 3777; Dec. Dig. ⊂⇒
934(2).]

Appeal from District Court, Fisher Coun-
ty; Jno. B. Thompson, Judge.

Suit by Madeline E. Rector and others
against R. P. House and others, and the Fi-
delity Trust Company intervened. From
judgment for plaintiffs, intervener appeals.
Affirmed.

Thompson & Barwise, G. W. Wharton, and
Geo. Thompson, Jr., all of Ft. Worth, and L.
H. McCrea, of Roby, for appellant. Wood-
ruff & Woodruff, of Sweetwater, for appel-
lees.

HUFF, C. J. The appellant alone briefs
this case, and we adopted the following state-
ment of the pleadings as set out in its brief:

"This is an injunction suit, brought by Made-
line E. Rector, joined pro forma by her hus-
band, E. R. Rector, seeking to restrain R. P.
House, sheriff of Fisher county, Tex., and the
Royston State Bank, a corporation, from sell-

ing 176.725 acres of land in Fisher county, Tex., as well as lots Nos. 13 and 14, in block 12, in the city of Royston, Fisher county, Tex., under alias execution issued out of the district court of Fisher county, Tex., on the 15th day of July, A. D. 1915, by J. C. Hilbun, clerk of the said court, in cause No. 698, style Royston State Bank v. E. R. Rector et al., to satisfy the balance due on said judgment amounting to the sum of $49.10. The petition of injunction alleged that the said property levied upon· by the sheriff was the separate property of Madeline E. Rector, and was acquired by her as a gift, and that a cloud has been placed upon her title by reason of the levy made by the sheriff under the said alias execution and advertisement of sale of the said property; said petition prayed for the issuance for a writ of injunction, restraining R. P. House, sheriff, from selling, or from further offering for sale, the property described, and further praying that the cloud so cast upon the title of Madeline E. Rector to the said property be removed upon final hearing, and that the said levy made by the sheriff under the alias execution be declared null and void and be held for naught. Said petition for injunction was granted by the court, and, appellee having filed a bond, as required by the court, the clerk of the district court of Fisher county, Tex., on September 4, 1915, issued a writ of injunction, restraining the sheriff, R. P. House, from selling the property, heretofore described, said writ of injunction being served upon the said R. P. Moore, sheriff, on September, 6, 1915, by T. W. Benson, constable of Fisher county, Tex., and being returnable to the district court of Fisher county, Tex., on September 28, 1915.

"On December 30, 1915, the Fidelity Trust Company, appellant herein, intervened in said injunction suit, and alleged: (1) That it was trustee for the Royston State Bank, all the assets of the said Royston State Bank having been duly transferred and assigned to it, among which assets was the judgment of the Royston State Bank v. E. R. Rector et al., upon which the levy of the property in controversy was made. (2) That the property in controversy and previously described, and which was levied upon by the sheriff, R. P. House, was community property of E. R. Rector and wife, Madeline E. Rector, the title to said property being in Madeline E. Rector as a matter of record. (3) That said property in ·controversy was not the separate property of Madeline E. Rector, appellee herein, and was not acquired by her as a gift by reason of the fact that said property was conveyed to the said Madeline E. Rector at the instance and request of Broad & Bomar of the city of Ft. Worth, who had been presented for a long time prior thereto with a claim of E. R. Rector for certain demands and moneys which the said E. R. Rector asserted that the said Broad & Bomar owed· him, and an equitable interest in 4,000 acres of land, situated in Jones, and Fisher counties, Tex. (4) That the said Broad & Bomar, in order to quiet E. R. Rector in his demands and claims as set forth, and with the purpose of compromise and settle once and for all all the said claims and demands held by the said E. R. Rector against Broad & Bomar, had the property in controversy conveyed to Madeline E. Rector upon the instance and request of her husband, E. R. Rector, and with the purpose and intention of placing said property beyond the reach of E. R. Rector's creditors, and to hinder and delay them from collecting their debts and demands. (5) That at the time Broad & Bomar had the property in controversy conveyed to appellee, Madeline E. Rector, the said Madeline E. Rector and her husband, E. R. Rector, executed a release to Broad & Bomar, extinguishing all of their demands and claims against Broad & Bomar, the said release being in the form of a general warranty deed from E. R. Rector and wife, Madeline E. Rec-

tor, to Broad & Bomar, conveying all of their right, title, and interest ·in a certain 4,000-acre tract of land in Jones and Fisher counties, out of which the original claim or claims of E. R. Rector against Broad & Bomar arose. (6) Intervener denied that the property in controversy belonged to the separate estate of Madeline E. Rector, denied it was a gift to her, denied that her husband E. R. Rector, had no interest therein, and generally denied all of the allegations of appellee, and demanded strict proof thereof. (7) Intervener alleged that the property in controversy, levied upon and advertised for sale by the sheriff, R. P. House, belonged to the community estate of appellee, Madeline E. Rector, and E. R. Rector, and as such it was subject to execution and levy so made by the sheriff—by reason of all of which allegations, appellant prayed that upon a hearing the property in controversy be declared the community property of E. R. Rector and Madeline E. Rector, and that the writ of injunction · be dissolved, and that the court direct the sheriff to readvertise the sale of said property and sell same under said alias execution."

The first assignment of error is that the court should have instructed a verdict for intervener on the ground that the undisputed evidence shows that Rector and wife had a community interest in land deeded to Broad & Bomar, for the land and lots in question, and that this community interest was so conveyed upon a compromise agreement or settlement between the parties, and that the title was put in Mrs. Rector with intent to protect it from the creditors of Rector. On March 11, 1913, Broad & Bomar entered into a contract with E. R. Rector, the husband of appellee, by which Rector sold to Broad & Bomar something over 4,000 acres of land at $10 per acre, amounting in the aggregate to $41,070, $30,000 to be paid in cash, and the assumption of liens on the land, it being understood that all liens that could be discharged were to be discharged by payment in cash, and the balance assumed by Broad & Bomar. Broad & Bomar gave Rector an option to repurchase the land for one year after its date, at the price paid by them, plus 8 per cent. interest, and it| was also agreed therein that Broad & Bomar would lease the land to Rector, and that Rector was to pay for the lease annually a stipulated sum, which would equal 8 per cent. on the purchase price of the land, plus the taxes. The facts in this case are sufficient to show that Rector did not exercise his option, but that a controversy arose perhaps as to the time in which he should have to exercise the option and whether or not he was to have more money, he contending for more, perhaps. These contentions were denied by Broad & Bomar; they contending that they had paid him the contract price according to the contract. It sufficiently appears from the facts in this case that Broad & Bomar paid the money they agreed to pay, and this was paid to the creditors of Rector, and Bomar says that before they could get the abstract, they found they had in fact paid more ˙to the creditors than the cash consideration which they were to pay amounted to, and that they decided to institute suit on the

indebtedness, which was secured by a lien on the 4,000 acres of land which they discharged, and they did institute suit and foreclosed the lien. Rector and his wife, however, did not make a deed to the land, as they had agreed to do in the contract.

On the 26th day of June, 1915, Rector and his wife did execute a deed to the 4,000 acres of land, reciting the consideration of $1. It further appears from the evidence that the 176-acre tract of land, and the lots levied on by the appellants, by virtue of an execution issued on a judgment in favor of the Royston State Bank against the Royston McCauley Mercantile Company and E. R. Rector. This land, the 176 acres, stood in the name of J. E. Willis, who owned one half of the land and held the other half in trust for Broad & Bomar, and the lots were owned by Broad & Bomar. On the 29th day of June, 1915, J. E. Willis conveyed the land to Mrs. Madeline E. Rector, as her separate property and for her sole and separate use, and Broad & Bomar conveyed the lots in the town of Royston, levied on, to Mrs. Rector. Bomar testifies by deposition in this case that they had paid for the 4,000 acres of land, and did not owe Mr. Rector anything therefor, and that there was no legal obligation on their part to pay Mr. Rector anything more for this land, and that they recognized no such obligation, but that they gave to Mrs. Rector the property in controversy, and procured Mr. Willis to make her a deed to that effect. He states:

"It is a fact that the conveyance made to Mrs. Rector of the land and lots in question was not made in payment of anything that we recognized as a valid, enforceable obligation, either legally or morally, but was made to her in the discharge of what Mr. Broad and I believed, under the circumstances, to be absolutely fair and just as between man and man, and was intended by us as a gift to Mrs. Rector that should be protected from the creditors of E. R. Rector. It is a fact that E. R. Rector never instituted any suit or suits against us, and it is a further fact that he never at any time threatened to institute any suit or suits against us. It is a fact that we did tell Mr. Rector that we did not owe him anything or pay him anything, but that we were going to make a donation to Mrs. Rector and have them both feel that they had been decently treated. Mr. Rector never requested us to convey this land to his wife. This was my own conception; in fact I did not think that Rector realized the necessity of the property being protected from his creditors; he did not seem to. I cannot say that there is any bias or leaning in this suit towards anybody," etc.

At another place he says:

"I do not know whether the conveyance of this property to Mrs. Rector was a gift or not, but it was intended by Mr. John W. Broad and myself as being a discharge of what we believed as between ourselves and our God as to what was fair and decent for us to do under the circumstances, and without the slightest belief on our part that we lawfully owed E. R. Rector or his wife anything. Yes; it is a fact that at the time we made this conveyance to Madeline E. Rector, we were not indebted in any manner to E. R. Rector or his wife, and it is a fact that E. R. Rector or his wife, Madeline E. Rector, ever paid or promis-

ed to pay us anything whatever for the making of said conveyance of land and lots."

The trial court submitted the following issues:

"A. A gift is the act by which the owner of a thing voluntarily transfers the title and possession of the same to another without consideration.

"B. A compromise is an agreement made between two or more parties as a settlement of matters in dispute between them, and in order to make a consideration for a compromise a binding one, there must be some matter of doubt between the parties as to whether a legal obligation exists or not.

"Bearing in mind the foregoing instructions, you will answer the following questions as above directed:

"Special issue No. 1. Was the deeds made by and at the instance of Broad & Bomar to Mrs. Madeline E. Rector on the 29th day of June, 1915, to the property in controversy, executed as a gift by Broad & Bomar, to said Mrs. Madeline E. Rector, as a gift is above defined?

"Special issue No. 2. Did the consideration, or any part there~f, by which Broad & Bomar had the land in controversy in this suit conveyed to Mrs. Madeline E. Rector grow out of any compromise, difference, or settlement between Broad & Bomar and E. R. Rector, out of the failure of E. R. Rector to exercise his option to redeem a 4,000-acre tract of land from Broad & Bomar under the terms of said option contract, executed March 9, 1913?"

The jury answered the issues as follows:

"To special issue No. 1, we answer, 'Yes.' "To special issue No. 2, we answer, 'No.' "

[1] It seems to us the only issue raised by the pleadings was submitted by the trial court to the jury, for their determination. The questions were whether the land was given to Mrs. Rector by Broad & Bomar, or whether it was deeded to her in consideration of the equity of Rector in the 4,000 acres of land ascertained upon compromise. The jury answered that this was a gift. The evidence in this case will support the findings, and Bomar's testimony shows, together with the written contract, that Broad & Bomar bought something over 4,000 acres of land, agreeing to pay therefor $10 per acre, amounting in the aggregate to $41,070. They were to pay about $30,000 in cash and to assume certain indebtedness secured by a lien on the land. Before the abstract was completed they had paid out something over the cash payment to various creditors of Rector. The contract gave Rector an option for one year to repurchase the land, and in the meantime he should occupy it as tenant and pay rent on the land equal to 8 per cent. on the purchase price. If he repurchased, he should pay the sum so paid and assumed, with 8 per cent. thereon, less the rents theretofore paid. Rector never exercised his option, but brought on some kind of controversy, claiming apparently that he should have further time to repurchase and, perhaps, the payment of additional sums of money. Broad & Bomar refused to recognize his contention, and contended for a compliance with the contract. In order to protect themselves further they brought suit of foreclosure against the land on the debts paid by them, which were se-

cured by a lien on the land. The liens they foreclosed, and it is inferable at least from the evidence that the land was purchased thereunder by them. Up to this time Rector and his wife had not made a deed to the land, as they had agreed to do. If the jury found that these facts were true, the title to the land under the contract and foreclosure vested in Broad & Bomar, and if this issue was not submitted to the jury, the presumption is that the court found the fact, in the absence of any special issue requested on that point. Rector, therefore, had no such interest in the land, which could be appropriated by any other creditor, after Broad & Bomar had paid the contract price as agreed in the written contract. The mere fact that Rector claimed such an interest did not necessarily make his claim true. The record shows repeatedly that Broad & Bomar denied that he had any such interest. The deed from Rector and wife may have cleared the record, but it was not necessary, if the facts, as found, were true, to vest the title in Broad & Bomar. The land and lots given Mrs. Rector at the time of the gift certainly were not subject to the claims of Rector's creditors, and would not be so after the gift, unless the community property of Rector and wife paid for them. The jury, from the facts, were authorized to find that the community property did not pay for the land. All that is shown is that there was an exchange of the deed to the 4,000 acres, to which Broad & Bomar had already the legal and equitable title. They had this title by having paid all that was agreed to be paid under the written contract enforceable under the law and by foreclosure of liens against the land. Whatever the motive of Broad & Bomar was in giving the land and lots to Mrs. Rector ought not affect the matter. This property was theirs to give. It did not deprive the creditors of Rector of any right therein to which they were before entitled. It withdrew nothing from the reach of the creditors subject to the payment of their debts; nothing belonging to Rector or the community went into the lands so given, if Bomar's testimony is to be believed, to which the jury appears to have given credence. The mere claim of Rector itself did not make it an asset; it was never recognized by Broad & Bomar as a valid claim or legal claim of any value. At most, the testimony only shows that Broad & Bomar felt that it would be fair to give Mrs. Rector this property; whether it was conscience money or what not is immaterial. It was nothing placed beyond the reach of creditors which they could have subject to their debt.

[2, 3] A vendor cannot commit a fraud on creditors by making a deed to a grantee to whom the land already belonged by equitable title. Barnett v. Vincent, 69 Tex. 685, 7 S. W. 525, 5 Am. St. Rep. 98; Peck v. Jones, 10 Tex. Civ. App. 335, 30 S. W. 382. We interpret the contract by Rector with Broad & Bomar as a contract of sale, vesting title to the 4,000 acres upon the payment of the consideration stipulated for, and not as a mortgage; but, if the contract is to be interpreted in the light of the facts as to whether it was a contract of sale or a mortgage, the facts in this case were sufficient to authorize the trial court to find that it was a contract of sale, and that the purchase price of the land was paid, and the presumption will prevail that he so found in support of the judgment. This particular issue was not requested to be submitted, or submitted to the jury for their finding, and under the statute the presumption is the court so found, if that is necessary to the judgment in this case.

The second, third, and fourth assignments of error are grouped, and relate to the refusal of the court to give special issues Nos. 1, 2, and 3. Issues Nos. 1 and 2 are substantially covered by issue No. 2, submitted by the court. Issue No. 3 appears to have been requested upon the same paper, or with 1 and 2. The court, having, as we consider it, substantially covered 1 and 2, properly refused to give the requested issues, as presented, and there was no error in refusing them. Issue No. 3, besides, was not warranted under the pleadings in this case, and the issues presented thereby. It was not shown in the pleading that the Royston Bank, at the time of these conveyances, was a creditor of Rector. The facts are sufficient to show that, but the pleadings do not allege it. Besides, in briefing the case, there is no proposition presenting the question of fraud under these three assignments, and the brief is insufficient to present the question of fraud, and does not present it in such manner as will authorize us to consider it.

The sixth and seventh assignments are overruled for the reasons stated in overruling the first assignment.

The eighth assignment is overruled. The assignment to the admission of the testimony of Mrs. Rector and the objections stated to the admission of her testimony do not present such error as will require a reversal, if any error at all.

As we view the case, there is no reversible error, and the judgment of the lower court will be affirmed.